IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| JANE DOE, JANET ROE, and JANE SMITH individually, and on behalf of others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>EFFINGHAM HEALTH SYSTEM FOUNDATION, INC. d/b/a EFFINGHAM HEALTH SYSTEM,<br><br>    Defendant. | CIVIL ACTION NO.: 4:23-cv-287 |

**O R D E R**

Before the Court is Plaintiffs' Motion to Remand. (Doc. 29.) Plaintiffs brought this class action in Effingham County Superior Court against Effingham Health System Foundation, Inc. d/b/a Effingham Health System for improperly disclosing private information to third parties through tracking technologies on its websites. (Doc. 30, pp. 1–2.) Plaintiffs allege this private information includes both personally identifying information and protected health information. (Id.) Defendant removed the case to this Court, asserting federal officer removal and federal question jurisdiction. (Doc. 1.) Plaintiffs then filed the at-issue Motion to Remand. (Doc. 29.) Defendant filed a Response, (doc. 41), as well as a Motion for Oral Argument on the issue, (doc. 42). For the reasons explained below, the Court **GRANTS** Plaintiffs' Motion to Remand, (doc. 29), and **DENIES as moot** Defendant's Motion for Oral Argument, (doc. 42).

## BACKGROUND

**I.     Factual Background**

The following facts are set forth in the Amended Complaint. (Doc. 30.) Defendant is a nonprofit health system headquartered in Effingham County, Georgia, where it provides a wide range of healthcare services. (Id. at p. 3.) Defendant encourages patients to use its website and online resources, such as its patient portal. (Id. at p. 4.) Defendant configured tracking technologies into its website and online platforms, which collected and transmitted Plaintiffs' private information to Facebook, Google, and other third parties without Plaintiffs' knowledge or consent. (Id. at p. 4.) These tracking technologies disclose Plaintiffs' "private health information" and "identifying details" to third parties. (Id. at p. 5.) The website also contained a "Notice of Privacy Practices" under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), which reassured its users that their information would be kept private in accordance with the "laws about the ways health care providers can use and share medical information about patients." (Id. at p. 17.)

The Amended Complaint contains other references to federal law. There are sections entitled "Defendant Violated HIPAA Standards" and "Defendant Violated [Federal Trade Commission ("FTC")] Standards," where Plaintiffs alleges "Defendant's conduct of implementing [tracking technologies] violates HIPAA Rules" and "conduct like Defendant's runs afoul of the FTC Act." (Id. at pp. 31–34.) In one of their substantive counts, Plaintiffs allege that "[p]ursuant to the laws set forth herein, including the FTC Act, HIPAA, [and others], Defendant was required by law to maintain adequate and reasonable data and cybersecurity measures to maintain the security and privacy of Plaintiffs' . . . [p]rivate [i]nformation." (Id. at pp. 46–47.) Just after, however, Plaintiffs assert that, "[i]n the alternative, and as a further basis for this claim,

Defendant's conduct violated [] Georgia's criminal prohibition against unauthorized wiretapping, eavesdropping, and surveillance." (Id. at p. 47 (citing O.C.G.A. § 16-11-60 *et seq.*).)

## II.     Procedural History

Plaintiffs filed this putative class action suit in the Superior Court of Effingham County, Georgia, on August 23, 2023. (Doc. 1-1.) Plaintiffs bring various state law causes of action for Negligence (Count I); Negligence *Per Se* (Count II); Invasion of Privacy (Count III); Breach of Implied Contract (Count IV); Unjust Enrichment (Count V); and Breach of Fiduciary Duty (Count VI). (Id. at pp. 44–54.)

On September 28, 2023, Defendant removed the suit to federal court. (Doc. 1.) In the Notice of Removal, Defendant asserts removal is proper under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and argues the Court has original jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiffs' claims are substantively federal claims under the federal Electronic Communications Privacy Act ("ECPA"). (Id. at p. 3.) On October 30, 2023, Plaintiffs filed the at-issue Motion to Remand, contending federal officer removal is inappropriate and no federal question jurisdiction exists. (Doc. 29.) Plaintiffs then filed their Amended Complaint, which expanded the plaintiff class but maintained the same state-law claims. (Doc. 30.) Defendant filed a Response to Plaintiffs' Motion to Remand. (Doc. 41.) Plaintiffs filed a Reply, (doc. 46), and Defendant filed a Sur-Reply, (doc. 49). Plaintiffs later filed a Notice of Supplemental Authority, (doc. 58), to which Defendant responded, (doc. 59), and Defendant later filed its own Notice of Supplemental Authority, (doc. 64). Defendant also filed a Motion for Oral Argument on Plaintiffs' Motion for Remand, (doc. 42), which Plaintiffs opposed, (doc. 47).

## LEGAL AUTHORITY

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994) (internal citations omitted). As such, a defendant may only remove an action from state court if the federal court would possess original jurisdiction over the subject matter. See 28 U.S.C. § 1441(a). A federal district court has original jurisdiction over civil actions that arise under federal law ("federal question jurisdiction") and those that involve diversity of citizenship ("diversity jurisdiction"). See 28 U.S.C. §§ 1331, 1332. There also exists "federal officer removal jurisdiction," by which district courts have jurisdiction over an action "against or directed to . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The federal officer removal statute "is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." Caver v. Cent. Ala. Elec. Coop., 845 F.3d 1135, 1142 (11th Cir. 2017) (quotation and citation omitted).

On a motion to remand, the removing party bears the burden of establishing federal jurisdiction. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). Removal jurisdiction is strictly construed with all doubts resolved in favor of remand. Mann v. Unum Life Ins. Co. of Am., 505 F. App'x 854, 856 (11th Cir. 2013). Removal jurisdiction based on a federal question "is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987) (citing Gully v. First Nat'l Bank, 299 U.S. 109, 112–13 (1936)).

Defendant relies on two grounds for removal and contends each ground provides an independent basis for federal subject matter jurisdiction over the case: (1) federal officer removal jurisdiction under 28 U.S.C. § 1442, or (2) federal question jurisdiction under 28 U.S.C. § 1331.

## DISCUSSION

### I.  Federal Officer Removal Jurisdiction

Defendant first argues that removal is proper because its at-issue conduct was conduct "acting under" a federal officer within the meaning of the Federal Officer Removal Statute, 28 U.S.C. § 1442. (Doc. 1.) Because Defendant is not itself a federal officer or agency, it must satisfy a three-pronged test to rely on 28 U.S.C. § 1442 for subject matter jurisdiction. Id. First, Defendant must show it is a "person within the meaning of the statute who acted under a federal officer." Id. Second, it "must show that it performed the actions for which it is being sued under color of federal office." Id. Stated differently, it "must show a causal connection between what [it has] done under asserted official authority and the action against [it]." Id. (internal quotation omitted). Third, it "must raise a colorable federal defense." Id.

Under the first prong, Plaintiffs do not dispute that Defendant is a "person" under the statute, but challenge whether it "was fulfilling a basic governmental task, or assisting the government in doing so, and thus 'acting under' an officer of the United States." (Doc. 29-1, p. 8 (quoting Caver, 845 F.3d at 1142).) The phrase "acting under" is broad and thus the Court must "liberally construe" this portion of Section 1442(a)(1). Watson v. Philip Morris Cos., Inc., 551 U.S. 142, 147 (2007). A "private person's 'acting under' must involve an effort to *assist*, or to help *carry out*, the duties or tasks of the federal superior." Id. at 152. In other words, the private person must help federal officers fulfill a basic governmental task that the government otherwise would have had to perform. Id. at 153–54.

The mere fact that the federal government regulates a private entity does not satisfy the statutory basis for removal under Section 1442(a)(1). Id. at 153. Instead, the relationship between the private actor and the federal officer must be one of "subjection, guidance, or control." Id. at 151 (quotation marks omitted). For example, in Watson, the Supreme Court held that a private tobacco company, although highly regulated, was not "acting under" a federal officer. Id. at 157. There, the tobacco company was using the government's required method to test its cigarettes before it sold the cigarettes to the public for its own profit. Id. at 146. The Court held that, by using that testing method, the tobacco company was "simply *complying*" with federal law, which does not bring a private person within the scope of Section 1442(a)(1). Id. at 152.

Defendant argues that the "acting under" requirement is satisfied here "because Plaintiffs' claims arise from the platforms [it] created to provide patients with online access to their health information under the Meaningful Use [P]rogram." (Doc. 41, p. 8.) The history and purpose of the Meaningful Use Program is best laid out by the Third Circuit Court of Appeals in Mohr v. Trs. of Univ. of Pa., 93 F.4th 100 (3d Cir. 2024):

> In 2009, Congress enacted the Health Information Technology for Economic and Clinical Health Act (HITECH Act). Pub. L. No. 111–5, §§ 13001–13424, 123 Stat. 115, 226– 79 (2009). Its goal was to encourage healthcare providers to adopt and use health information technology, such as electronic health records (EHR). See 42 U.S.C. § 300jj-11(b). In part, the HITECH Act directed the Department of Health and Human Services (HHS) to make incentive payments to any Medicare-participating provider that is a "meaningful EHR user." 42 U.S.C. § 1395w-4(o)(1)(A)(i). Beginning in 2015, the law also instructed HHS to reduce Medicare reimbursements to any Medicare-participating provider that is "not a meaningful EHR user." 42 U.S.C. § 1395w-4(a)(7)(A)(i).
>
> In 2010, the Centers for Medicare and Medicaid Services (CMS), an agency within HHS, promulgated regulations to implement the HITECH Act and created a program called the Meaningful Use Program . . . . 42 C.F.R. §§ 495.2–495.110. Under the [Meaningful Use] Program, CMS created certain objectives and measures that providers must meet in order to qualify as a "meaningful EHR user" and thus receive incentive payments and avoid reductions in Medicare reimbursements. 42 C.F.R. §§ 495.20–495.24. For example, one objective is whether a provider uses health information technology to "provide[ ] patients ...

6

> with timely electronic access to their health information," which participating providers often accomplish through the use of an online patient portal. 42 C.F.R. § 495.24(d)(5)(i)(A).

Mohr, 93 F.4th at 103 (3d Cir. 2024). Defendant argues that, with these programs, "the federal government *delegated* authority to [Defendant] to assist the government with establishing a nationwide health information technology infrastructure for patients through a partnership," (doc. 41, p. 9), and thus, federal officer removal jurisdiction is proper because "Plaintiff's claims relate to alleged conduct undertaken by [Defendant] in furtherance of the government's Meaningful Use Program and successor programs," (doc. 1, p. 3). Plaintiffs, on the other hand, argue federal officer removal is inappropriate because Defendant was not "acting under a federal officer's authority" when it installed trackers on its websites. (Doc. 29-1, pp. 8–15.) Plaintiffs also argue that Defendant's "voluntary participation in a federal incentive program to make electronic health records accessible" fails to "transform it into a federal officer," because Defendant is not performing duties that the Government would otherwise have to perform. (Doc. 29-1, pp. 8, 11.)

      Defendant fails to satisfy the first prong by showing that it was "acting under" a federal officer when it created and operated its websites and patient portal. In Watson, though the Supreme Court provided that the "acting under" language is to be liberally construed, the Court also made clear that this "broad language is not limitless." 551 U.S. at 147 (citations and internal quotation marks omitted). While the Eleventh Circuit Court of Appeals has not directly addressed whether a healthcare provider's participation in these programs qualifies as "acting under" a federal officer, the wealth of caselaw across the country is persuasive. For example, just as Plaintiffs allege here, the plaintiffs in Mohr "allege[d] that [the defendant] share[d] patients' identities, sensitive health information, and online activity from its patient portals with Facebook in violation of [state] privacy law," 93 F.4th at 103, yet the Third Circuit rejected Plaintiffs' claims that this qualified as

"acting under" a federal officer, reasoning that "[t]he federal government did not delegate any legal authority to [the defendant] to operate a patient portal *on behalf of* the government," id. at 105. The court elaborated that, "[a]bsent private action, the federal government itself would not be operating any patient portal." Id. (internal citation omitted). That "a private party has contractual relationship with the federal government does not mean that it is acting under that federal authority." Id. at 106.

The Fifth, Eighth, and Ninth Circuit Court of Appeals arrived at the same conclusion under similar facts. As the Eighth Circuit reasoned in Doe v. BJC Health Sys., "[p]arties merely doing business in a highly regulated arena," as Defendant is here, "will not [be able to make the showing that they acted under a federal officer], even if they accept government subsidies." 89 F.4th 1037, 1045 (8th Cir. 2023). The Eighth Circuit acknowledged that "[t]he line between a party who acts as a government middleman and a party who accepts federal funding for its own business purposes may sometimes be blurry," but concluded, "[w]herever the line may lie, [the defendant] clearly sits on the private side." Id. "The design of private websites is not—and has never been—a basic *governmental* task. When [Defendant] created and operated an online portal for its patients, it was not doing the federal government's business. It was doing its own." Id.; see also Doe v. Cedars-Sinai Health Sys., No. 23-55466, 2024 WL 3308893, at *6 (9th Cir. July 5, 2024) ("Th[e Meaningful Use] Program's requirements do not show an express delegation of authority to [the defendant] to accomplish a basic governmental task on the [government's] behalf. Far from it. [The defendant] *chose* to satisfy the Meaningful Use Program's objectives by building a patient portal using tracking technology."). Likewise, the Fifth Circuit recently held, in Martin v. LCMC Health Holdings, Inc., that "[the defendant] did not assist or carry out any tasks of the government, nor was it an instrumentality of the government. Instead, the online patient portal was operated by

[the defendant] and existed for the benefit of [its] patients and staff." 101 F.4th 410, 415 (5th Cir. 2024). "Put simply, it is a private website, built by a private entity, to serve that private entity's patients and staff." Cedars-Sinai Health Sys., 2024 WL 3308893, at *7. The same is true here.

Defendant argues in its Sur-Reply that its participation in the Meaningful Use Program transcends mere voluntary compliance with federal law, because "[a] rural critical access provider like [Defendant] cannot remain financially viable and continue to provide healthcare services to surrounding communities without participating in these programs." (Doc. 49, pp. 3–4.) The Fifth Circuit addressed this argument head-on in Martin:

> [The defendant] further contends, however, that it acted under a federal officer's directions because it created an online patient portal to avoid financial consequences. Indeed, the consequence for not complying with HHS's Meaningful Use requirements is that [the defendant]'s Medicaid fee-for-services reimbursements will be reduced. But embedding tracking pixels onto its website had no bearing on [the defendant]'s Medicaid reimbursements. [The defendant] was not required to embed tracking pixels onto its website when it created the online patient portal; neither would its reimbursements be reduced if it had not done so.

101 F.4th at 415. The Fifth Circuit is correct. See also Cedars-Sinai Health Sys., 2024 WL 3308893, at *7 ("[C]onstruing Watson to permit removal based on incentive payments would open the floodgates to a myriad of entities hoping to invoke federal officer removal jurisdiction, impermissibly expanding the scope of [Section] 1442(a)(1) beyond its purview."). Even if the Court were to concede that participation in the Meaningful Use program is, practically speaking, "involuntary," the Meaningful Use Program did not require Defendant to implement the alleged tracking technologies into their websites. See id. ("These regulations do not *require* [the defendant] to build a specific type of website or patient portal—much less a portal that uses the tracking technology described in the complaint.")

The Court finds persuasive the sound reasoning of other circuit and district courts holding that similarly situated defendants were not "acting under" a federal officer in managing their patient portals.[1]  See, e.g., Elkins v. Se. Indiana Health Mgmt. Inc., No. 123CV01117JRSTAB, 2023 WL 6567438, at *1 (S.D. Ind. Oct. 10, 2023) ("If one asks, 'is a private hospital effectively a government agent when it makes a website to earn incentive payments?' the *prima facie* answer is 'absolutely not.'"); Doe v. BJC Health Sys., No. 4:22-CV-919-RWS, 2023 WL 369427, at *4 (E.D. Mo. Jan. 10, 2023), *aff'd sub nom.* 89 F.4th 1037 (8th Cir. 2023) ("I am not persuaded that [defendant hospital]'s receipt of statutory incentive payments means that it is 'acting under' a federal officer for purposes of the federal officer removal statute.  [It] is not assisting or helping a federal officer carry out her duties or tasks by creating a website and patient portal to allow patients online access to medical information (and allegedly transmitting their private data to third parties without their knowledge or consent)."); Crouch v. Saint Agnes Med. Ctr., No. 122CV01527ADAEPG, 2023 WL 3007408, at *5 (E.D. Cal. Apr. 19, 2023), *report and recommendation adopted*, No. 122CV01527ADAEPG, 2023 WL 6940170 (E.D. Cal. Oct. 20, 2023) ("Defendant's participation in the Meaningful Use Program does not establish . . . that Defendant was acting with or for a federal officer.  If anything, Defendant's mutually beneficial relationship with the Government shows that it was acting as a private party to advance its own interests rather than 'assisting' the Government in performing a basic duty.") (internal citation omitted); Martin v. LCMC Health Holdings, Inc., No. CV 23-411, 2023 WL 4540547, at *2 (E.D.

---

[1] Defendant relies primarily on two cases, Doe I v. UPMC, No. 2:20-CV-359, 2020 WL 4381675 (W.D. Pa. July 31, 2020), and Doe v. ProMedica Health Sys., Inc., No. 3:20 CV 1581, 2020 WL 7705627 (N.D. Ohio Oct. 30, 2020).  (Doc. 41, p. 10.)  Not only are these two of the earliest analyses of this issue, but in the years since, UPMC was explicitly rejected by the Third Circuit in Mohr, 93 F.4th at 16, and the ProMedica Court cited only UPMC in its conclusion that the defendant satisfied the "acting under" prong because "[its] participation [in the program] assisted the federal government in achieving that goal [of creating a unified system of patient electronic health records]," ProMedica, 2020 WL 7705627, at *2.

10

La. July 5, 2023), *aff'd*, 101 F.4th 410 (5th Cir. 2024) ("Defendants argue, because the websites on which they use tracking pixels link to their patient portal, and because Defendants created the patient portal pursuant to the Meaningful Use regulations at the direction of the federal government, federal officer removal is appropriate. . . .  [S]ince 2020, twelve district court decisions have addressed federal officer removal on the basis of a theory substantially similar to Defendants', and all but two have rejected Defendants' position."); Mohr, 93 F.4th at 105 ("When [Defendant] operates [its] patient portal, it is not doing the government's business; it is doing its own. . . .  Advancing governmental policy while operating one's own business is not the same as executing a delegated governmental duty."); Martin, 101 F.4th at 415 ("[T]he online patient portal was operated by [Defendant] and existed for the benefit of [Defendant's] patients and staff.  The operation of the online patient portal here is not pursuant to a federal officer's directive because the federal government would not have created an online patient portal if [Defendant] had chosen not to do so.").

While the Court is not bound to reach the same conclusion, this outcome is consistent with the Eleventh Circuit principle that "federal regulations alone are not enough to satisfy the federal officer removal statute," Caver, 845 F.3d at 1143, and Supreme Court caselaw that, to "act under" a federal officer, one must "go beyond mere compliance with the law and instead help the government fulfill other basic governmental tasks," Watson, 551 U.S. at 153.  While Defendant does "advance the government's policy by operating a patient portal that meets certain objectives and measures under the [Meaningful Use] Program . . . that is mere compliance with federal laws and regulations." Mohr, 93 F.4th at 105 (internal quotations omitted).  Moreover, the Meaningful Use program does not require the voluntary integration of the alleged tracking technologies.  "At bottom: [Defendant]'s relationship with the federal government is too attenuated to show any

11

delegation of legal authority, and consequently, [Defendant] cannot show that it acted pursuant to a federal officer's directions for purposes of federal officer removal." Martin, 101 F.4th at 416. Because Defendant has failed to satisfy the requirement of acting under a federal officer's directive, it has failed to show removal is proper under the Federal Officer Removal Statute.

## II.     Federal Question Jurisdiction

Defendant separately argues that removal is proper because Plaintiffs' claims arise under federal law for two reasons: (1) although "[Plaintiffs] attempted to disguise their federal claims as state law claims to evade federal jurisdiction, . . . they are substantively claims for violations of the federal [ECPA]"; and (2) "Plaintiffs' ECPA allegations also establish federal question jurisdiction under [Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308 (2005)]." (Doc. 41, p. 18; doc. 1, pp. 14–16.)

### A.     Whether Plaintiffs' Claims are Substantively Federal Law Claims

Defendant first argues that Plaintiffs' state-law claims are substantively claims under the federal ECPA because Plaintiffs' Amended Complaint "parrot[s] the language of the ECPA nearly verbatim, and specifically allege[s] each element of an ECPA claim . . . . [Plaintiffs] just avoid labeling it as such." (Doc. 49, p. 6.) Defendant's argument contradicts the "long[-]recognized [principle that] plaintiffs are the master of the complaint and are free to avoid federal jurisdiction by structuring their case to fall short of a requirement of federal jurisdiction." Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013) (internal citation and quotations omitted). As "master of the claim," a plaintiff "may prevent removal by choosing not to plead an available federal claim." Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc., 182 F.3d 851, 854 (11th Cir. 1999) (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). Though Plaintiffs claim they could have pleaded an ECPA claim, they chose to bring only state-law claims. (See doc. 29-1, p.

22 ("[W]hile Plaintiff[s] possibly *could* have pled a claim under the ECPA, [they] *chose* not to do so. Thus, removal on the theory that [they have] alleged such a claim is improper.").) Indeed, "the fact that a plaintiff *could* have brought a federal claim does not make the plaintiff's case removable. What a plaintiff *actually alleges* is what determines jurisdiction." City of Pearson ex rel. City Council v. St. Marys Ry. W., LLC, No. 5:05-CV-15, 2005 WL 8157064, at *2 (S.D. Ga. Apr. 18, 2005) (emphasis added). Because Plaintiffs did not allege any federal claims, simply asserting that their claims are substantively comparable to claims under federal law is insufficient for removal.

### B. Whether Plaintiffs' State Law Claims Raise Federal Issues Under Grable

Defendant also argues there is a "federal issue" at stake because it anticipates Plaintiffs will use HIPAA and FTC Act violations to prove liability under their state-law theories. (Doc. 41, pp. 22–23.) Defendant cites the Grable exception to the well-pleaded complaint rule, (id.), which admits federal-question jurisdiction where a federal issue will control an otherwise state-law claim. Grable, 545 U.S. at 314. Under the Grable exception, "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013) (citing Grable, 545 U.S. at 314). Grable "carves a 'special and small category' of cases out of state court jurisdiction over state-law claims." Adventure Outdoors, Inc. v. Bloomberg, 552 F.3d 1290, 1296 (11th Cir. 2008) (quoting Empire Healthchoice Assur., Inc. v. McVeigh, 547 U.S. 677, 699 (2006)).

However, "[t]he mere presence of a federal issue in a state cause of action does not automatically confer federal-question jurisdiction." Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1375 (11th Cir. 1998). Defendant cannot rely on Plaintiffs' potential use of HIPAA and

13

FTC Act violations for federal jurisdiction because the Supreme Court has already rejected the idea that a federal regulatory scheme, itself lacking a private right of action, can provide federal-question jurisdiction where the complaint alleges the violation of the federal law to support a state cause of action.  Merrell Dow Pharms. Inc. v. Thompson, 478 U.S. 804, 817 (1986); see Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1174 n.5 (11th Cir. 1985) (no implied private right of action under FTC Act); Laster v. CareConnect Health Inc., 852 F. App'x 476, 478 (11th Cir. 2021) ("[N]o private right of action exists under HIPAA.").  Here, though the Amended Complaint references HIPAA and the FTC Act, they are used as regulatory standards to evidence liability under state-law causes of action.  (See doc. 30, pp. 46–48 (using HIPAA and FTC Act violations to support a state law negligence per se claim); see also Elkins, 2023 WL 6567438, at *3 ("[Defendant] argues that there is a 'federal issue' at stake here because [Plaintiffs] might use HIPAA violations to prove liability under [their] state-law theories.  That issue does not fit through Grable's narrow door.")).  Accordingly, this is not grounds for removal based on federal question jurisdiction.

In sum, Defendant has failed to show that federal question jurisdiction existed to support removal.  Because Defendant has not met its burden in showing federal jurisdiction is proper, Plaintiffs' Motion to Remand is **GRANTED**.  (Doc. 29.)

### III.    Attorneys' Fees

In their Motion to Remand, Plaintiffs ask for attorneys' fees "[b]ecause [Defendant']s basis for removal was plainly unfounded."  (Doc. 29-1, p. 24.)  The Court has discretion to award attorneys' fees under 28 U.S.C. § 1447(c) "where the removing party lacked an objectively reasonable basis for seeking removal.  Conversely, when an objectively reasonable basis exists, fees should be denied."  Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005).  "Fees are not awarded automatically on remand, nor is there a presumption that they should be awarded at all."

City of Brunswick v. Se. Educ. Servs., Inc., No. 2:23-CV-92, 2023 WL 5228923, at *2 (S.D. Ga. Aug. 15, 2023) (citing Martin, 546 U.S. at 136.). The caselaw surrounding the federal officer removal statute in this context of the Meaningful Use Program is fairly new, and no court in the Eleventh Circuit has ruled on the matter. Fees are unwarranted here because "the question of whether removal was proper in this case is an unsettled legal question with plausible arguments on both sides of the issue." Greaves v. McAuley, 264 F. Supp. 2d 1078, 1088 (N.D. Ga. 2003). Although Defendant did not prevail on its federal officer or federal question arguments, it cannot be said that Defendant's removal was made despite "clearly established law" demonstrating no basis for removal. Accordingly, Plaintiffs' request for attorneys' fees is **DENIED**.

## CONCLUSION

For these reasons, Plaintiffs' Motion to Remand, (doc. 29), is **GRANTED**, and Defendant's Motion for Oral Argument, (doc. 42), is **DENIED as moot**.[2] But the Court **DENIES** Plaintiffs' request for attorneys' fees. The Court **DIRECTS** the Clerk of Court to **REMAND** this case to the Superior Court of Effingham County, Georgia, for further proceedings. Following remand, the Clerk of Court is **DIRECTED** to close this case.

**SO ORDERED**, this 17th day of July, 2024.

R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

---

[2] The parties have thoroughly briefed the issues before the Court, and the Court concludes that oral argument would not help resolve Plaintiffs' Motion to Remand. (Doc. 29.)